268 So.2d 716 (1972)
McGOWAN-RIGSBY SUPPLY, INC.
v.
CHARLES CARTER & COMPANY, INC., et al.
BIG RIVER PLUMBING AND HEATING COMPANY, INC.
v.
CHARLES CARTER & COMPANY, INC., et al.
Nos. 8971, 8972.
Court of Appeal of Louisiana, First Circuit.
October 2, 1972.
Rehearing Denied November 13, 1972.
*718 Harvey Posner, Robert B. Jennings, Jr., and Charles W. Wilson, III, Watson, Blanche, Wilson, Posner & Thibaut, Baton Rouge, for appellants.
George R. Covert, Baton Rouge, for Mc-Gowan-Rigsby.
Walton J. Barnes, Baton Rouge, for Big River Plbg. & Htg. Co., Inc.
Before LANDRY, ELLIS and TUCKER, JJ.
LANDRY, Judge.
These consolidated actions involve the demands of the plumbing subcontractor, Big River Plumbing and Heating Company, Inc. (Big River), for the balance due and certain "extras" performed pursuant to agreement with defendant, Charles Carter & Company, Inc. (Carter, Inc.), prime contractor for construction of a rental housing project known as Gaslight Square, owned by defendant, Charles Carter (Carter), and also the claim of materialman-lienor, Mc-Gowan-Rigsby Supply, Inc. (McGowan), for plumbing materials and supplies furnished Big River and incorporated in the project. In Big River's action, defendants, Carter and Carter, Inc., reconvened for the value of work allegedly completed by Carter, Inc. which should have been performed by Big River. In McGowan's action, defendants alleged the materials supplied were defective, and alternatively, third partied Big River to recover any amount awarded in favor of lienor. The trial court rendered judgment in favor of Big River in the sum of $2,334.75, and in favor of McGowan in the amount of $1,540.06. Judgment was granted Carter and Carter, Inc. in the sum of $134.11 on their reconventional demand, but their third party demand against Big River in Mc-Gowan's action was rejected. Defendants have appealed.
Pursuant to an unrecorded and unbonded contract between Carter and Carter, Inc., the latter agreed to make certain repairs and perform certain work on eight frame, duplex residences following their relocation upon the work site.
Big River's subcontract, dated October 15, 1968, stipulated a price of $5,500.00 for which Big River undertook to perform the following work on the project:
"Complete all plumbing and heating and associated work to meet all City and State Code requirements and to put the plumbing of the eight (8) duplex houses in satisfactory working order:
The work will consist of but will not necessarily be limited to the following:
1. Complete and run all sewer lines from each house to city sewers in 4" transite. All existing sewer lines will be flushed.
2. Connect gas to hot water heaters, floor furnaces, bathroom heater outlet, kitchen stove outlet and two bedroom outlets. This includes cleaning and lighting hot water heaters and floor furnaces.
3. No new fixtures, hot water heaters, floor furnaces included in this price.
4. New seals, supply lines and new washers will be installed if required.
5. This price includes all supply and drain rough in for washing machines.
6. Water lines are to be run from each unit to the water meter.
7. Gas lines will be run from the meter to all outlets as listed in Item 2. Gas meter locations will be on back corner of each house.

*719 8. No additional vent piping is included.
9. Sinks will be removed and reinstalled to allow for replacement of Counter Tops.
10. Purchase of new fixtures, vents, parts, etc. will be paid at plumbing contractor's cost properly supported by copies of invoices.
11. Payments will be made weekly based on estimated cost of work completed less 10% retainage.
Pertinent herein is the following contract provision governing changes and alterations in the work.
"5(a) Subcontractor shall make all alterations, furnish materials for and perform all extra mork (sic) or omit any work Contractor may require without nullifying this agreement, at a reasonable addition to/or deduction from the contract price hereinafter set forth and pro rata to the same. However, no alterations or changes shall be made except upon Contractor's written order. The amount to be paid by Contractor, or allowed by Subcontractor, as a result of such changes or alterations, shall be stated in such order."
It is conceded that on January 2, 1969, a written change order was issued by Carter, Inc. providing that Big River was to:
"Install a total of sixteen (16) double panelray type heaters, one in each apartment unit, with thermostats, including all venting through roof and all connections in accordance with City code requirements at $100.00 per apartment for a total cost of $1,600.00, including all labor, materials, taxes and permit cost."
In addition to the contract price of $7,100.00, Big River claims the sum of $1,237.50 for extras consisting of $200.00 for the setting of 16 toilets at $12.50 each; $12.50 for taking up and resetting broken toilets and $1,025.00 for the repair of broken water lines. Of the total sum allegedly due, Big River acknowledges payment of $5,302.75, and claims an additional $3,034.75. Alternatively, Big River claims under quantum meruit and the theory of unjust enrichment. Defendants' reconventional demand seeks recovery of $2,919.92, consisting of §2,500.00 for removing and replacing defective water lines; $56.35 for labor borrowed by Big River from Carter, Inc.; $155.04 for materials allegedly damaged by Big River's employees, and the remaining $208.53 for repairs to defective water pipes installed by Big River. Carter, Inc. also asked for $1,000.00 attorney's fees allegedly due under the contract and cancellation of Big River's lien.
The parties have stipulated that the materials represented by McGowan's lien were furnished Big River and used on subject project. It is further stipulated that the cost of said materials is the sum sought by McGowan, namely, $1,540.06.
It is undisputed that certain plastic water lines laid by Big River had to be removed and replaced. Also conceded is the fact that some leaks in piping and water lines were repaired by Big River and some by Carter, Inc. The trial court found, and the record shows, that replacement of the pipe, which met the requirements of the City-Parish Plumbing Code, and which was approved by the City-Parish Inspector, was necessitated due to its inadequacy. The trial court also found that Carter's claim that Big River used defective piping was unfounded in that the pipe used, although now withdrawn from the approved list, was approved at the time of installation. The record also supports the trial court's conclusion that Carter and Carter, Inc. approved the piping used because of Carter's desire to complete the project as inexpensively as possible, and in so doing, bargained for the particular pipe installed to minimize costs.
The reconventional demands of Carter and Carter, Inc. were disallowed excepting for claims totaling $134.11, which consisted of value of labor borrowed by Big River, $56.35; the value of concrete steps broken *720 by Big River's employees, $51.48; repairs to a water heater, $5.69, and labor to dispose of broken steps, $20.00. In addition to the judgments rendered in favor of Mc-Gowan and Big River, the trial court awarded each said litigant the further sum of $1.50 as the cost of recording their respective liens. Because the amount claimed by McGowan was owed by the purchaser, Big River, the trial court's judgments limited defendants' liability in both suits to the amount of the judgment rendered in favor of Big River, subject to credit for the amount found to be due defendants on their reconventional demands.
Conceding that Big River fulfilled its obligation "to complete all plumbing and heating and associated work to meet all City and State Code requirements", defendants nevertheless urge that Big River failed in its duty to "put the plumbing of the eight (8) duplex houses in satisfactory working order", because the plastic water lines had to be replaced and the project was plagued with numerous leaks in the lines and piping.
The record supports the trial court's conclusion that defendants failed to establish that Big River used defective or subgrade piping on the project. The City-Parish Plumbing Inspector, Lester Mut, testified the plastic pipe used by Big River was approved on final inspection of the project because it met the then current requirements of the City-Parish Plumbing Code. Malcolm Broussard, testifying for Big River, stated in effect that the particular pipe used was acceptable to Carter who approved the contract containing specifications calling for the use of that precise product. Broussard's testimony stands uncontradicted, and is also corroborated by the contract in evidence.
Appellants rely upon Brasher v. City of Alexandria, 215 La. 887, 41 So.2d 819, wherein a contractor was held liable for using defective materials in completion of a contract to put an entire system in "working order". Brasher is factually inapposite. In Brasher, above, the contractor knowingly installed defective materials when the owner refused to provide funds beyond the contract price. Here there is no showing that Big River was aware that the pipes installed would not withstand the water pressure in the area. Moreover, in this instance, the pipe was approved not only by the contractor, but also the governmental inspector.
We find no merit in appellant's claims that Big River's demand for all extras, other than the $1,600.00 for installing panel ray heaters, should be denied because they were not authorized by a written change order as provided in Paragraph 5 (a) of the contract above. It is settled law that such a contract provision is binding upon the parties unless it is waived, Roff v. Southern Construction Corporation, La.App., 163 So.2d 112, and cases cited therein. However, recovery for alterations or extras based on parol evidence is allowed despite such a contract provision where the alterations or extras are necessary or were not foreseen; where the alterations or extras are of such scope, it must be supposed they were made with the owner's knowledge; where the owner was aware of the work and made no complaint and where the work is performed pursuant to a subsequent oral agreement authorizing same. See Roff, above, and authorities therein cited. We find from the record that the extras performed in this instance by Big River were done with the express knowledge and consent of Carter, Inc., and that such work was both necessary and unforeseen. It follows that Big River is entitled to payment of the value thereof.
We also find no merit in appellants' contention that two checks totaling $178.25 given by Carter, Inc. to Big River should be credited against the balance due by Carter, Inc. under the contract. In this regard, Carter testified the checks were payments on the contract amount. On the other hand, Big River's President, Ziegler, and his associate, Broussard, testified the *721 checks were in payment for work performed outside the scope of the contract, at Carter's request, and paid for separately. The trial court resolved this factual dispute adversely to appellants. Since a matter of credibility was involved, the finding of the trial court is entitled to great weight and will not be disturbed unless shown to be manifestly erroneous. Crane Supply Company v. Drake & Plauche, Inc., La.App., 255 So.2d 188. We find no such manifest error in this respect.
Appellants complain of the trial court's rejection of their third party demand against Big River in McGowan's action to recover for the value of materials furnished. This position is based on a contract provision stipulating that no further payments would be required of Carter, Inc. (after certain specified payments were made) until Big River furnished written evidence of payment of all claims for materials furnished or labor performed on the job. Appellants urge that since Big River obviously could not furnish such written evidence in view of the McGowan lien, judgment should have been rendered against Big River on appellants' third party demand. We agree. Although the trial court's limitation of appellants' liability to the amount of the judgment rendered in favor of Big River in effect amounted to judgment in favor of appellants on their reconventional demand, the better procedure requires rendition of judgment on appellants' third party demand. In either event, the rights and positions of the parties remain the same, but granting appellants' third party demand accomplishes the result in a more orderly manner from a procedural standpoint. The judgments will be recast accordingly.
Appellants seek attorney's fees from Big River in the McGowan action, and also in Big River's suit pursuant to the following contract provisions:
"18a. * * *. In the event suit is filed by any person, firm or corporation asserting a claim or lien for labor, services or materials used or purchased for use in the work covered by this contract, Subcontractor will, at his own cost and expense, including counsel fees, defend such suit and pay any judgment rendered therein.
"21. Should Contractor employ an attorney to enforce any of the provisions hereof, or to protect its interest in any matter arising under this contract, or to collect damages for the breach of this contract, or to prosecute or defend any suit resulting from this contract, or to recover on the surety bond given by Subcontractor under this contract, Subcontractor and his surety, jointly and severally agree to pay Contractor all reasonable cost, charges, expenses and attorney's fees expended or incurred."
It was stipulated between appellants and Big River that if attorney's fees were found to be due, the trial court would fix the amount thereof in such sum as it deemed reasonable.
It is significant that in appellants' third party demand filed in the McGowan action, no claim is made for attorney's fees and none prayed for. LSA-C.C.P. art. 861 expressly provides that when items of special damage are claimed, they "shall be specifically alleged." We are mindful that LSA-C.C.P. art. 862 provides that a final judgment may grant a party such relief as he is entitled to notwithstanding his failure to demand it in his pleadings. Said Article is without application in this instance inasmuch as the redactor's notes thereto point out that its purpose is primarily to eliminate the "theory of the case doctrine" which previously existed in this state. Pursuant to Article 862, above, a type of relief which is prayed for may be granted on a legal theory or principle not specifically presented or urged by a litigant. This does not mean, however, that the *722 courts can grant a type of relief for which a litigant has not prayed when the particular type of relief sought is one which must be specially alleged as required by Article 861, above. Under the circumstances, no recovery can be allowed appellants for attorney's fees in the action filed by Mc-Gowan.
In Big River's suit, appellants seek attorney's fees of $1,000.00 predicated upon the decision rendered in West Bank Steel Erectors Corporation v. Charles Carter & Company, La.App., 248 So.2d 52. In the cited authority, defendant therein was awarded attorney's fees under a provision substantially the same as paragraph 21 above. We note, however, that in the cited authority, defendant contractor prevailed and was granted judgment in the sum of $2,000.00. In this instance, Big River's suit was prompted by the failure of Carter, Inc. to pay the contract price due after the work was completed, and Big River has emerged as the victorious party. We do not interpret paragraph 21, above, as indicative of Big River's agreement to be responsible for the contractor's attorney's fees in an action which Big River successfully prosecutes to obtain full payment for work performed pursuant to the contract in accordance with contract terms and specifications. An agreement of such nature will not be presumed because of the obvious unconscionable advantage resulting to the contractor therefrom. Since paragraph 21 does not specifically provide for the payment of attorney's fees by Big River to Carter, Inc., under the circumstances obtaining herein, we hold it is without application in this instance.
Separate judgments will be rendered herein.

JUDGMENT IN NO. 8971
It is ordered, adjudged and decreed that in McGowan-Rigsby Supply, Inc. v. Charles Carter & Company, Inc. et al., Number 8971 on the docket of this court, the judgment of the trial court is reversed insofar as it failed to render judgment in favor of defendants, Charles Carter and Charles Carter & Company, Inc., on said defendants' third party demand against defendant, Big River Plumbing and Heating Company, Inc., and judgment rendered therein in favor of said defendants, Charles Carter and Charles Carter & Company, Inc., against third party defendant Big River Plumbing and Heating Company, Inc., in the sum of $1,540.06, together with legal interest thereon from date of judicial demand, until paid. Said judgment is further reversed insofar as it is limited to the amount of the judgment in Suit Number 8792 which is consolidated therewith.
It is further ordered, adjudged and decreed that in all other respects, the judgment of the trial court in the McGowan suit is affirmed; all costs directly attributable to said action to be paid by defendant, Big River Plumbing and Heating Company, Inc.
Affirmed in part, reversed in part and rendered.

JUDGMENT IN NO. 8972
For the reasons set forth above, the judgment of the trial court is reversed insofar as it limits liability of defendants, Charles Carter and Charles Carter & Company, Inc.
It is further ordered, adjudged and decreed that except as herein specifically amended, the judgment of the trial court is affirmed; all costs in this proceeding, as well as the cost of taking and transcribing testimony in this matter and Number 8971 on the docket of this court, to be paid by defendants, Charles Carter and Charles Carter & Company, Inc.
Amended and rendered.